OPINION
{¶ 1} Defendant-appellant, Clifford Donta Williams, appeals the denial of his motion for new trial in the Butler County Court of Common Pleas. We affirm the decision of the trial court.
 {¶ 2} On Friday, August 3, 1990, at approximately 10:20 p.m., Hamilton police officers responded to a call that someone had been shot on Beckett Street in the city of Hamilton, Ohio. When the police arrived, they found a red cab from the Clifton Cab Company of Cincinnati with its motor stalled and the meter stopped, displaying a fare of $32.10. The driver, Wayman Hamilton, was behind the steering wheel with a single gunshot wound in his forehead. Paramedics airlifted Hamilton to a hospital in Cincinnati, where he was pronounced dead. Doctors recovered a .25 caliber bullet from Hamilton's head.
 {¶ 3} On the front seat of the cab, detectives recovered a single .25 caliber cartridge casing from a semiautomatic weapon. Hamilton's trip sheet indicated that, in addition to the $32.10 fare shown on the cab's meter, he had generated approximately $50 in fares that evening. While Clifton cab drivers customarily carried money to make change in their shirt pockets, there was no money in Hamilton's shirt pockets.
 {¶ 4} Earl Jones, a dispatcher for the Clifton Cab Company, testified that at approximately 9:20 p.m. on the night of the shooting, Hamilton's cab had been dispatched to pick up a fare at the Fuel Mart gas station on Compton Road in Mt. Healthy. The person who wanted the cab stated that he was going to Hamilton, Ohio. Jones indicated he received three or four calls over a period of approximately one hour from the Fuel Mart; two or three calls came from the person who wanted the cab and one came from a Fuel Mart employee.
 {¶ 5} William Teasley and James Trivett were working at the Fuel Mart that evening. They identified appellant as the person who called for the cab at the gas station. Teasley testified that appellant walked into the gas station and asked if he could use the phone because he did not have any money to use the pay phone on the corner. Teasley handed the phone and phone book to appellant to call a cab. Appellant waited at the gas station for the cab for approximately 20 to 45 minutes, talking with Teasley and Trivett. Appellant stated in the course of the conversation that he did not have any money, that he had just come from Los Angeles, and that he was staying in Mt. Healthy. After a period of time, a red Clifton cab arrived just as Trivett made a final call to the cab company. Appellant got in the front seat of the cab and left the Fuel Mart.
 {¶ 6} On Monday, August 6, 1990, Jeff Wallace, a resident of Columbus, Ohio, was in Hamilton searching for work. At approximately 9:45 p.m., Wallace left his hotel to go to the store. A few blocks away, Wallace picked up appellant, who was hitchhiking. At appellant's request, Wallace drove him to an apartment in Hamilton, where appellant changed clothes. Appellant then offered to pay Wallace gas money if Wallace would drive him somewhere else. Wallace agreed and followed appellant's directions until appellant asked Wallace to drive down an alley in downtown Hamilton. Wallace became suspicious and asked appellant to get out of the truck. At that time, appellant pulled a .25 caliber pistol out of his pocket, shoved a clip into it, told Wallace, "I got one bullet in the chamber" and demanded all of Wallace's money. Wallace shifted the truck into low gear and accelerated. As he did this, Wallace heard one gunshot. Appellant fired a second shot that hit Wallace on the back of the head. After a struggle, appellant fled the scene, and Wallace sought help for his injury.
 {¶ 7} While Wallace was in the hospital, he saw a newspaper article that showed a picture of appellant, who had been arrested for the murder of Wayman Hamilton. Wallace recognized appellant as the person who shot him. Wallace called the police and subsequently identified appellant from a group of photographs the police showed him at the hospital and also from a police line-up.
 {¶ 8} Detectives examined the truck that Wallace drove the night of the shooting. The detectives discovered two fired .25 caliber cartridge casings in the truck. The detectives submitted the two casings found in the truck and the casing recovered from the scene of the Wayman Hamilton murder to the Ohio Bureau of Criminal Investigation ("BCI") for comparison.
 {¶ 9} David Hall, a ballistics and firearms expert from BCI, testified that all three of the cartridge casings had at one time been loaded in, chambered in, and extracted from the same firearm. Hall's testimony indicated that although he could not conclusively determine whether the cartridge casings had been fired from the same firearm, they had been extracted from the same firearm. Hall explained that he found matching characteristics on the rims of all three cartridge casings where the firearm's extractor hooks in and pulls the casing out of the chamber. Hall also testified that the three fired cartridge casings had similar, uniformly smooth firing pin impressions that indicated that they could have been fired from the same .25 caliber semi-automatic firearm. Hall did indicate, however, that there was not sufficient detail for a conclusive determination due to the smoothness of the firing pin and the hardness of the casings.
 {¶ 10} On September 19, 1990, the Butler County Grand Jury returned a four-count indictment against appellant. Count one charged appellant with the aggravated murder of Hamilton, count two charged appellant with the aggravated robbery of Hamilton, count three charged appellant with the aggravated robbery of Wallace, and count four charged appellant with felonious assault of Wallace. On January 10, 1991, the jury found appellant guilty as charged in the indictment. A penalty phase hearing was held on January 17, 1991. The jury found that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and recommended that appellant be sentenced to death on the aggravated murder charge and the specifications. On February 26, 1991, the trial court accepted the jury's recommendation and imposed a sentence of death on the aggravated murder charge and its specifications. The trial court imposed a ten to 25 years sentence for the aggravated robbery of Hamilton, with three years actual incarceration on the specification. The trial court imposed a ten to 25 years sentence for the aggravated robbery of Wallace, with three years actual incarceration on the specification. The trial court imposed an eight to 15 years sentence on the felonious assault of Wallace, with three years actual incarceration on the specification.
 {¶ 11} In June 1999, appellant filed a petition for Writ of Habeas Corpus in the United States District Court for the Southern District of Ohio. Appellant filed a motion for discovery in October 2000 that included a request to take the deposition of Jeff Wallace. On September 25, 2001, appellant was granted discovery, which included authorization to depose Wallace. Wallace was deposed on December 14, 2001. In his deposition, Wallace stated that he was addicted to crack cocaine and that he used cocaine at the time in question. Wallace stated that he picked up appellant looking to obtain cocaine or perpetrate a robbery upon appellant in order to get the money to purchase cocaine. Wallace also stated that appellant's firing of the gun "was probably an accident."
 {¶ 12} On February 12, 2002, appellant filed a motion for a new trial on the basis of newly discovered evidence in Wallace's deposition. The trial court overruled appellant's motion on December 4, 2002. Appellant appeals the decision raising two assignments of error.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "The Trial Court Erred In Denying Appellant Williams' Motion For A New Trial On The Basis That His Motion Was Untimely Filed."
 {¶ 15} Appellant argues that his motion for a new trial based on newly discovered evidence was timely filed. Appellant maintains that he was unavoidably prevented from the discovery of the evidence because the victim, Wallace, did not change his testimony until he was deposed in December 2001. Furthermore, appellant asserts that he was unable to file the motion for new trial until the victim, Wallace, would sign an affidavit or swear to his testimony.
 {¶ 16} A trial court's decision denying a request for new trial is reviewed for an abuse of discretion. State v. Filiaggi, 86 Ohio St.3d 230,237, 1999-Ohio-99. An abuse of discretion is more than an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151, 157. In order to constitute an abuse of discretion, the court's attitude must be unreasonable, arbitrary, or unconscionable. Id.
 {¶ 17} A new trial may be granted on the motion of the defendant "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). Such a motion must be made within 120 days of the end of the proceedings if the basis for the motion is the discovery of new evidence. Crim.R. 33(B). If it is made to appear "by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." Id. Clear and convincing proof "requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial." State v. Mathis (1999), 134 Ohio App.3d 77,79.
 {¶ 18} In the present case, appellant moved for leave to file a delayed motion for a new trial pursuant to Crim.R. 33(A)(6) approximately 11 years after the verdict was rendered in his case. In support of his motion, appellant attached Wallace's December 14, 2001 deposition. Appellant alleges that the deposition "indicates [his] actual innocence of certain counts in his indictment."
 {¶ 19} Wallace stated in the deposition that he picked up appellant hitchhiking because he was addicted to crack cocaine and was looking for someone with drugs or someone to steal money from so he could purchase drugs. Wallace also stated that when appellant asked him to drive down an alley, he refused and "threw the truck into first gear." Wallace stated, as a result, "it might have been an accident when [appellant] shot me."
 {¶ 20} However, nothing in the deposition was contrary to Wallace's trial testimony. At trial, Wallace admitted that he picked up appellant hitchhiking and that he had used cocaine on the day in question. In his deposition and in his trial testimony, Wallace identified appellant as the person who pulled a gun out of his pocket and pointed it at him, told him "I got one bullet in the chamber," and demanded all of his money. Both Wallace's deposition and trial testimony establish that appellant was the one who shot him in the head, and that he was "pretty sure" that two shots were fired.
 {¶ 21} Furthermore, a review of the record reveals that appellant had knowledge of this information three years before filing the motion for new trial. Wallace was interviewed by the state public defender in March 1999 and he related the same information as contained in his December 2001 deposition. Appellant maintains that he was unavoidably prevented from acting on the March 1999 information because Wallace refused to sign an affidavit regarding the details. However, the phrases "unavoidably prevented" and "clear and convincing proof" do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner. State v. Fortson, Cuyahoga App. No. 82545,2003-Ohio-5387, at ¶ 11.
 {¶ 22} On the basis of the deposition submitted with his motion, appellant failed to meet his burden of establishing by clear and convincing proof that the evidence was undiscoverable within 120 days. See Crim.R. 33(B). Moreover, appellant failed to demonstrate that he was unavoidably prevented from filing a timely motion for a new trial. Consequently, the trial court did not err in denying appellant's motion for leave to file a delayed motion for a new trial. Appellant's first assignment of error is overruled.
 {¶ 23} Assignment of Error No. 2:
 {¶ 24} "The Trial Court Erred In Denying Appellant Williams' Motion For A New Trial On The Merits."
 {¶ 25} Appellant argues that statements in Wallace's December 2001 deposition disclose a strong probability that the result would change if a new trial were granted. Appellant argues that the statement that firing the gun "was probably an accident" and that Wallace "intended to rob" appellant "indicates appellant's actual innocence of certain counts in his indictment." Furthermore, appellant argues that the joinder of an aggravated murder and an aggravated robbery substantially prejudiced him given Wallace's "new testimony." Therefore, appellant maintains the trial court erred by denying his motion for new trial.
 {¶ 26} We note that appellant's motion for new trial was untimely filed, therefore, the trial court overruled it on that basis and never reached the merits of the motion. However, even if the trial court did reach the merits, appellant's motion for new trial would still fail.
 {¶ 27} To prevail on a Crim.R. 33(A)(6) motion for a new trial on the ground of newly-discovered evidence, the movant must demonstrate that the evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. State v. Petro (1947), 148 Ohio St. 505, syllabus. A motion for a new trial is directed to the sound discretion of the trial court, and the court's decision will not be reversed on appeal in an absence of an abuse of discretion. See State v. Schiebel (1990),55 Ohio St.3d 71, paragraph one of the syllabus.
 {¶ 28} The phrases "unavoidably prevented" and "clear and convincing proof" do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner. Statev. Fortson, 2003-Ohio-5387, at ¶ 11. Crim.R. 33(B) permits a Crim.R. 33(A)(6) motion to be filed out of time only upon a finding by the court that the movant was unavoidably prevented from discovering the evidence within the prescribed time. But a finding that the evidence was undiscoverable before trial, regardless of whether the finding may be implied from the record or was made expressly following a hearing, does not compel a new trial, if the movant has failed to satisfy the remainingPetro requirements. Here, the record of the proceedings at trial provides a ground upon which the trial court might have based its denial of the motion. Specifically, appellant had failed to demonstrate a strong probability that the new evidence would change the outcome if a new trial were granted.
 {¶ 29} As stated in the first assignment of error, Wallace admitted at trial that he picked up appellant hitchhiking and that he had used cocaine on the day in question. Wallace testified at trial and stated in his deposition that appellant was the person who pulled a gun out of his pocket and pointed it at him, that appellant was the one who shot him in the head, and that he was "pretty sure" that two shots were fired. Nothing in the deposition was contrary to Wallace's identification of appellant or belief that appellant was the perpetrator of the shooting.
 {¶ 30} Furthermore, nothing in Wallace's deposition changes the physical evidence offered at trial. In this case, the ballistics evidence, although not conclusive, tended to show that the same gun was involved in the murder of Wayman Hamilton and the assault on Wallace. A ballistics and firearms expert from BCI testified that all three of the cartridge casings, the one recovered from the scene of the Hamilton murder and two casings recovered from the cab of Wallace's truck, had at one time been loaded in, chambered in, and extracted from, the same firearm.
 {¶ 31} Evidence tending to show that the same weapon was used in both crimes is pertinent to the issue of identity. Wallace's identification of appellant coupled with the .25 caliber casings found at the Hamilton crime scene and in the cab of Wallace's truck connected the two crimes and served to identify appellant as the perpetrator of both crimes. The law favors joining multiple criminal offenses in a single trial under Crim.R. 8(A). State v. Lott (1990), 51 Ohio St.3d 160, 163. Two or more offenses can be joined if they are of the same or similar character. State v. Torres (1981), 66 Ohio St.2d 340, 343. Due to the proximity in time and location, the apparent use of the same gun, and Wallace's identification of appellant as the perpetrator, the trial court correctly permitted joinder of the separate crimes.
 {¶ 32} Having thus concluded that joinder of the separate crimes was correctly permitted and that appellant failed to demonstrate a strong probability that the new evidence would change the outcome if a new trial were granted, we hold that appellant's motion for new trial is without merit. Accordingly, we overrule the second assignment of error.
 {¶ 33} Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.