[Cite as *State v. Watson*, 2017-Ohio-1403.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                               :

    Plaintiff-Appellee,                :            CASE NO.   CA2016-08-159

    - vs -                                  :            O P I N I O N
                                            4/17/2017

                                            :

KEVIN WATSON,                               :

    Defendant-Appellant.              :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR87-06-0303


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Barney DeBrosse, LLC, Derek A. DeBrosse, 503 South Front Street, Suite 240B, Columbus, Ohio 43215, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Kevin Watson, appeals a decision of the Butler County Court of Common Pleas, dismissing his motion for leave to file a motion for new trial and his motion for new trial and/or petition for postconviction relief.  For the reasons that follow, we affirm the decision of the trial court.

{¶ 2}   We have previously detailed the facts of appellant's case as follows:

{¶ 3} On the evening of June 3, 1987, Eli Mast and Krista Toney were checking lottery receipts at Mast's New and Used Furniture Store located at 427 South Second Street in Hamilton, Ohio. *State v. Watson*, 12th Dist. Butler No. CA88-02-014, 1989 Ohio App. LEXIS 1165, *1 (Mar. 31, 1989) (*Watson I*). Two juveniles, Marlon Moon, age 15, and Willie Prater, age 16, were in the rear of the store playing video games. *Id.* At approximately 7:30 p.m., a black man entered the store carrying a gym bag and a 12-gauge shotgun. *Id.* The man ordered Mast to lie face down on the floor and then threw the gym bag at Toney and told her to fill it with money. *Id.* Moon and Prater ran into a back room, apparently unnoticed by the assailant. *Id.* at *2. As Toney filled the gym bag with money, the assailant placed the shotgun at the back of Mast's head and fired once, killing Mast instantly. *Id.* He then pointed the gun at Toney and threatened to kill her before running out of the store. *Id.*

{¶ 4} The police arrived and Toney provided a description of the assailant. *Id.* The next day, Donald Cook reported that Rodney Henderson had stolen a twelve-gauge shotgun from him the day of the robbery at 6:30 p.m. *Id.* Cook explained that he was conversing with Henderson and appellant, and then, Henderson left the room and retrieved a shotgun from the trunk of Cook's car. *Id.* at *2-3. According to Cook, Henderson loaded the gun with seven shells and showed it to appellant, who nodded his head in approval when asked, "will this do?" *Id.* at *3. Cook unsuccessfully protested giving the gun to Henderson. *Id.* Moon, Prater, and Toney all positively identified appellant as the man they saw in the store in statements made both before and during the trial. *Id.* at *6. Toney recognized that appellant was the assailant because appellant had stayed at her house the previous night with her stepbrother Rodney Henderson. *Id.* at *7.

{¶ 5} On October 31, 1987, appellant was adjudged guilty by a jury in the Butler County Court of Common Pleas of one count of aggravated murder with a firearm specification and one count of aggravated robbery with a firearm specification. *Id.* at *3-4.

The jury recommended that appellant be sentenced to death, the trial court accepted the recommendation, and on November 12, 1987, sentenced appellant to death. *Id.* at *4.

{¶ 6} Appellant presented seven assignments of error to this court in his direct appeal. *Id.* We overruled all seven assignments of error and affirmed the trial court's judgment. *Id.* Appellant appealed his case to the Ohio Supreme Court, which found that a death sentence was an inappropriate penalty, and remanded the case to the trial court for the imposition of a life sentence. *State v. Watson*, 61 Ohio St.3d 1, 18 (1991) (*Watson II*). On remand, the trial court imposed a sentence of life imprisonment with eligibility for parole after 30 years for the aggravated murder conviction, to be served consecutively with the terms of incarceration imposed for the aggravated robbery conviction and the firearm specification. *State v. Watson*, 76 Ohio App.3d 258, 260 (12th Dist.1992) (*Watson III*). Appellant appealed the trial court's sentence to this court, and we affirmed the judgment of the trial court. *Id.* A motion for leave to appeal to the Supreme Court of Ohio was overruled in *State v. Watson*, 65 Ohio St.3d 1421 (1992) (*Watson IV*).

{¶ 7} On September 16, 1996, appellant filed a petition for postconviction relief pursuant to R.C. 2953.21. Appellant alleged the state suppressed exculpatory evidence and that evidence existed that Henderson admitted he was the person who murdered Mast. Appellant supported the latter argument with the affidavit of Larry Smith, who served prison time with Henderson. We affirmed the trial court's decision to dismiss appellant's petition and the Ohio Supreme Court declined jurisdiction. *State v. Watson*, 126 Ohio App.3d 316, 327 (12th Dist.1998) (*Watson V*), *jurisdiction declined by State v. Watson*, 82 Ohio St.3d 1413 (1998) (Table) (*Watson VI*).

{¶ 8} On February 16, 2016, appellant filed his instant motion for leave to file a motion for new trial and his motion for new trial and/or petition for postconviction relief. Appellant supported his present motions with his own affidavit and Smith's affidavit from

1996, as well as the affidavits of Prater, Michelle Williams, Kimberly Blair, and Zanetta Williams.

{¶ 9} Appellant avers he has always maintained his innocence and has pursued proving such with reasonable diligence and any delay in bringing the present motions/petition was caused by the Innocence Project dropping his case, which forced him to search for new counsel while incarcerated with limited financial resources. Smith avers that while incarcerated together, Henderson admitted to murdering Mast. Prater avers he was young and very afraid when questioned, so he was eager to please the police; therefore, he has "had misgivings about [his] identification" of appellant and truly does not believe appellant killed Mast. Michelle Williams avers she is related to Henderson and when she was seven years old, she recalls Henderson admitting to shooting Mast. Blair avers she had a child with Henderson and lived with him in the 1990s until their separation in July 1997. Blair further avers that while they lived together, Henderson admitted to killing Mast. Zanetta Williams avers she and Henderson were close friends, and that, during the late 1990s Henderson admitted to killing Mast. Michelle Williams, Blair, and Zanetta Williams all aver Henderson died of an apparent overdose in 2000.

{¶ 10} The trial court denied appellant's present motion for leave to file a motion for new trial and motion for new trial and/or petition for postconviction relief without holding an evidentiary hearing and this appeal followed

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MR. WATSON'S MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE PETITION FOR POSTCONVICTION RELIEF.

{¶ 13} In his sole assignment of error, appellant presents four issues for review. Appellant asserts he has shown by clear and convincing proof that he was unavoidably

prevented from discovering the evidence supporting his motion for leave within the time requirements as set forth in Crim.R. 33 and R.C. 2953.23. Appellant further argues the affidavits submitted in his motion for new trial and/or petition for postconviction relief did more than merely impeach or contradict former evidence as well as that they are reliable and credible. Finally, appellant contends the trial court abused its discretion by denying his motions/petition without holding a hearing on the matter.

{¶ 14} "[A] postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment." *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). A trial court's decision to grant or deny a postconviction petition pursuant to R.C. 2953.21 is upheld absent an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58. Likewise, Crim.R. 33 motions for new trial are not to be granted lightly and will not be disturbed absent an abuse of discretion. *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 21. A review under the abuse of discretion standard is a deferential review. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

## MOTION FOR LEAVE

{¶ 15} Crim.R. 33 provides a new trial may be granted on a defendant's motion for any of six causes materially affecting the defendant's substantial rights, including "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). Crim.R. 33(B), provides, in pertinent part:

> Motions for new trial on account of newly discovered evidence
> shall be filed within one hundred twenty days after the day upon
> which the verdict was rendered * * *. If it is made to appear by

> clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

Therefore, appellant must establish by "clear and convincing proof that [he] was unavoidably prevented from the discovery of the evidence upon which he must rely." *Thornton* at ¶ 18, discussing Crim.R. 33(B). Unavoidable delay results "'when the [appellant] had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the required time in the exercise of reasonable diligence.'" *Id.*, quoting *State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 12-MA-44, 2012-Ohio-5360, ¶ 11. Clear and convincing proof requires appellant to establish more than a mere allegation he was unavoidably prevented from discovering the evidence he now seeks to introduce to support his motion for leave to file a motion for new trial. *Thornton* at ¶ 19. To meet his burden, the measure or degree of proof appellant must demonstrate is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 16} Because the present matter is well outside the 120-day period, appellant was required to obtain leave of court to file a motion for new trial. *State v. Williams*, 12th Dist. Butler No. CA2003-01-001, 2003-Ohio-5873, ¶ 17. If leave of court is given to file a motion for new trial, the defendant must then demonstrate the alleged newly discovered evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

{¶ 17} Likewise, appellant's petition for postconviction relief is untimely. R.C. 2953.21(A)(2) states a petition for postconviction relief must be filed no later than 365 days after the date on which the trial transcript is filed with the court of appeals in the direct appeal. R.C. 2953.23(A)(1)(a) thru (b) provide that an untimely petition for postconviction relief may be considered by a trial court where "the petitioner [demonstrates he] was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief" and the "petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *."

{¶ 18} Appellant argues that he was unavoidably prevented from discovering the affidavits relied upon to support his motion for leave, and therefore, the trial court abused its discretion by finding otherwise. Appellant contends that it would have been impossible for him to produce this evidence at trial because it did not exist at such time and did not become available until the affiants later came forward.

{¶ 19} With respect to Smith's affidavit, the trial court properly found it did not constitute newly discovered evidence, as the affidavit was previously addressed by the trial court when it dismissed appellant's first petition for postconviction relief, which we affirmed in *Watson V*.

{¶ 20} The trial court summarily found appellant failed to meet his burden to show by clear and convincing proof he was unavoidably prevented from discovering the remainder of the evidence within the parameters of Crim.R. 33 and R.C. 2953.23, based on the factors in *Petro* and an analysis of the reliability and credibility of each supporting affidavit. While the analysis conducted by the trial court is certainly pertinent to ruling on whether to grant appellant's motion for new trial and/or petition for postconviction relief, the framework for ruling on appellant's motion for leave begins with an examination of whether new evidence

material to appellant's defense was discovered that the appellant could not with reasonable diligence have discovered and produced at trial. If appellant meets his burden under Crim.R. 33 and R.C. 2953.23 for newly discovered evidence, then the question becomes whether such evidence warrants granting a new trial or appellant's petition for postconviction.

{¶ 21} In consideration of Prater's affidavit, appellant has failed to demonstrate he was unavoidably prevented from presenting such evidence at trial. Prater testified as a witness for the state at appellant's trial in 1987. Appellant, with reasonable diligence, could have discovered Prater's "misgivings" concerning his trial testimony within the periods prescribed by Crim.R. 33 and R.C. 2953.23 for filing a timely motion for new trial and petition for postconviction relief. Furthermore, neither affidavit provides an explanation as to why Prater's "misgivings" about his trial testimony was not discovered earlier. For instance, the affidavits neither address why it was impossible to discuss the issue with Prater earlier nor is there any indication that Prater refused to recant his trial testimony prior to 2011. Therefore, appellant has failed to meet his burden of proof to establish unavoidable prevention in seeking leave to file his motion/petition with respect to Prater's affidavit.

{¶ 22} With respect to the affidavits of Michelle Williams, Blair, and Zanetta Williams, appellant has met his burden to demonstrate he could not have with reasonable diligence discovered and produced such evidence at trial. There is no indication that appellant had knowledge of the existence of the affiants claims within the prescribed periods. Nor was it possible for appellant to possess such knowledge since Henderson's alleged admissions did not occur until the 1990s. Therefore, appellant has met his burden of proof to establish unavoidable prevention in seeking leave to file his motion/petition with respect to the affidavits of Michelle Williams, Blair, and Zanetta Williams. Accordingly, the trial court erred by finding appellant did not meet his burden of proof for these three affidavits. However, as demonstrated by our analysis below, this error was not more than an error of law or judgment

necessitating a finding the trial court abused its discretion.

## MOTION FOR NEW TRIAL AND/OR PETITION FOR POSTCONVICTION RELIEF

{¶ 23} Appellant asserts the affidavits submitted in support of his motion/petition do more than merely impeach or contradict former evidence – as the trial found – but rather, they establish a new trial would likely have resulted in a different result. Appellant further asserts the trial court erred in finding the supporting affidavits unreliable and not credible. Appellant contends the trial court further erred by making these findings without holding an evidentiary hearing. Therefore, appellant argues the trial court abused its discretion by denying appellant's motion for new trial and/or petition for postconviction relief.

{¶ 24} The Ohio Supreme Court has stated "[t]he trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant." *State v. Calhoun*, 86 Ohio St.3d 279, 284 (1999). "That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice." *Id.* Likewise, the decision to hold an evidentiary hearing on a motion for new trial is left to the sound discretion of the trial court. *State v. Zielinksi*, 12th Dist. Warren No. CA2014-05-069, 2014-Ohio-5318, ¶ 16.

{¶ 25} We note that we need not further address Smith's affidavit because the trial court properly found that it did not constitute newly discovered evidence. Likewise, appellant failed to meet his burden for unavoidable prevention in regards to Prater's affidavit. Nonetheless, even if we assume arguendo appellant had met his burden, as discussed below, Prater's affidavit is still insufficient to warrant the granting of appellant's motion/petition.

{¶ 26} As stated above, to warrant the granting of a motion for new trial based on newly discovered evidence in a criminal case, appellant must show the new evidence (1)

discloses a strong probability of a different result if the motion is granted, (2) the evidence has been discovered since the trial, (3) it could not have been discovered in the exercise of due diligence prior to trial, (4) is material to the issues, (5) is not merely cumulative of former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

{¶ 27} In making credibility determinations, the trial court should consider all the relevant factors, including, but not limited to "(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial." *State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999). "[A] trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.*

{¶ 28} Appellant contends the trial court erred by not considering the *Calhoun* factors in its credibility analyses. Specifically, appellant asserts the trial court should have been limited to the five factors listed in *Calhoun*, and thus, the trial court's consideration of the timeliness of information contained in the affidavits was improper. However, appellant's argument that *Calhoun* provides an exclusive listing of the factors to be considered does not comport with the plain language of the opinion. The case provides that a trial court should "consider all relevant factors", and then, proceeds to list five specific factors as "among" the relevant factors for a trial court to consider. *Accord id.* ("Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility"). Therefore, contrary to appellant's

assertion otherwise, the timeliness of bringing forth the affidavits and the fact they were not offered until well after Henderson's death were relevant factors for the trial court to consider.

{¶ 29} Appellant argues the trial court erred in its finding that Prater's affidavit was unreliable and not credible because it unequivocally states he does not believe appellant shot Mast. Appellant states Prater was a key prosecutorial witness since he identified appellant as the shooter; therefore, his recanted testimony tends to create a strong probability of a different result at a new trial. Appellant further argues that individually or collectively, the affidavits of Michelle Williams, Blair, and Zanetta Williams create a strong possibility of a different result at trial because they each identify Henderson as the actual shooter.

{¶ 30} We first note that a claim of newly discovered evidence founded in the recantation of the testimony of an important witness does not alone entitle the appellant to a new trial. *State v. Wood*, 12th Dist. Madison No. CA97-08-034, 1998 Ohio App. LEXIS 2361, *4 (June 1, 1998). Rather, when such a motion is brought, the trial court, acting as the finder of fact, must assess the credibility of the alleged recanting testimony. *Id.*, citing *State v. Moore*, 99 Ohio App.3d 748, 755 (1st. Dist.1994); *see also Taylor v. Ross*, 150 Ohio St. 448 (1948), paragraph three of the syllabus ("[r]ecanting testimony ordinarily is unreliable and should be subjected to the closest scrutiny").

{¶ 31} We find the trial court properly considered Prater's affidavit recanting his trial testimony. In so doing, the trial court acknowledged Prater "had misgivings about" his identification of appellant as the shooter and found this position to be contradictory to his trial testimony. The trial court stated recanting affidavits as the basis for a new trial upon newly discovered evidence are viewed with extreme suspicion and determined Prater's affidavit lacked reliability and credibility. Appellant argues that the trial court erred by making this finding solely on the basis the recanting testimony contradicts or impeaches the original testimony. However, the record does not reflect appellant's assertion. As discussed below,

- 11 -

the trial court further explained that the circumstances in which the supporting affidavits were set forth contributed to its finding that the affidavits would not create a strong probability of a different result.

{¶ 32} Likewise, appellant fails to identify how the affidavits of Michelle Williams, Blair, and Zanetta Williams do not merely impeach or contradict former evidence. At trial, Prater, Moon, and Toney all identified appellant as the shooter. The statements in the three affidavits directly contradict the trial testimony by identifying Henderson as the shooter. Additionally, Henderson's alleged admissions to Michelle Williams, Blair, and Zanetta Williams constitute hearsay, as they are statements made by one other than the declarant while testifying, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C).

{¶ 33} Appellant asserts the statements fall within a hearsay exception because they are statements against Henderson's interest. A hearsay statement is admissible pursuant to Evid.R. 804 where the declarant is unavailable and the statement, at the time of its making, tended to subject the declarant to criminal liability, such that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. Appellant correctly asserts the alleged admissions would meet this definition because Henderson is now deceased and the statements tend to subject him to criminal liability as the actual shooter.

{¶ 34} However, Evid.R. 804(B)(3) further provides that "[a] statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Furthermore, "[a] bare showing of some extent of corroboration is not enough. Instead, the rule contemplates a demonstration of corroborating circumstances which, on balance, persuade the [court] that the statement bears the clear indicia of reliability and trustworthiness * * *." *State v. Branham*, 104 Ohio App.3d 355, 359

(12th Dist.1995). *Compare State v. Yarbrough*, 95 Ohio St.3d 227, 235-36 (2002) (stating courts usually find statements made to someone sharing a close relationship with the defendant, such as a spouse or child, a corroborating circumstance, that when considered with the other circumstances, may support a finding the statements are trustworthy), *with State v. Issa*, 93 Ohio St.3d 49, 60-61 (2001) (analyzing circumstances indicating untrustworthiness, such as circumstances added using hindsight, where the appellant has something to gain by inculpating another for a crime, and an attempt to shift the blame for the crime), *and State v. Saunders*, 23 Ohio App.3d 69, 74 (10th Dist.1984) (explaining a relevant consideration is whether the corroborating circumstances "lead one to be skeptical about [the statement's] reliability").

{¶ 35} The trial court identified the circumstances under which the alleged admissions were made and properly found that they tend to show the untrustworthiness of the statements. The affidavits state that in the 1990s Henderson told the affiants he was the actual shooter; yet the affiants waited over a decade before coming forward with this revelation. In addition to the substantial delay in coming forward, the trial court found that identifying Henderson, who died of an apparent drug overdose in 2000, as the actual shooter was "convenient and suspicious", and thus, negated the statements trustworthiness. The trial court further discussed that Blair ended her relationship with Henderson in 1997 and Henderson died in 2000, yet she waited until 2011. Similarly, Zanetta Williams avers that her promise to not tell anyone about the admission dissolved when Henderson passed away, yet she waited until 2011. The record clearly supports the trial court's findings that the above circumstances indicate the statements' untrustworthiness; therefore, the alleged admissions constitute inadmissible hearsay.

{¶ 36} Finally, the trial court determined that appellant's affidavit was self-serving and

"of little value and consequence to th[e] court." We find no error in the trial court's decision.[1]

"Ohio courts have consistently held that affidavits from interested parties such as defendants, co-defendants, and family members are self-serving and may be discounted." *State v. Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 17. Appellant's affidavit does not set forth any operative facts to support any newly discovered evidence; therefore, the trial court properly found it to be of little consequence.

{¶ 37} Accordingly, the trial court did not abuse its discretion by denying appellant's motion/petition without holding an evidentiary hearing when it found the affidavits not credible and unreliable, and thus, did not create a strong possibility of a different result.

{¶ 38} Appellant's sole assignment of error is overruled.

{¶ 39} Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.

---

1. To clarify, a defendant's affidavit in a case such as this will always be "self-serving" in the sense that it supports the relief the defendant seeks. The affidavit is not disqualified merely because it is "self-serving." Rather, an affidavit properly characterized as "self-serving" is subject to the analysis under *Calhoun* to determine the weight to which it is entitled. *State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999)