[Cite as *State v. Harris*, 2020-Ohio-4101.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-07-121 |
| | : | O P I N I O N |
| - vs - | | 8/17/2020 |
| | : | |
| WAYNE HARRIS, JR., | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2017-05-0794


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Wayne Harris, Jr., #A742927, Ross Correctional Institution, P.O. Box 7010, Chillicothe, Ohio 45601, pro se


**HENDRICKSON, P.J.**

{¶1} Appellant, Wayne Harris Jr., appeals from a decision of the Butler County Court of Common Pleas denying his petition for postconviction relief without holding a hearing. For the reasons set forth below, we affirm the trial court's decision.

{¶2} The underlying facts relevant to appellant's appeal were previously set forth by this court in *State v. Harris*, 12th Dist. Butler No. CA2018-04-076, 2019-Ohio-1700, and

are as follows:

> On June 14, 2017, appellant was indicted on one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree, one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree, and one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree. According to the bill of particulars, the charges stemmed from allegations that, on April 30, 2017, while at a motel in Fairfield, Ohio, appellant threw a black bag containing a stolen firearm out of his room while the police were knocking on his door. Because appellant had been previously convicted of a felony offense of violence, he was prohibited from knowingly acquiring, having, carrying, or using a firearm.

> Appellant initially pled not guilty to the charges. On January 16, 2018, following plea negotiations, appellant entered a guilty plea to having weapons while under disability in exchange for the remaining charges being dismissed. Appellant, who was represented by counsel, was provided with a Crim.R. 11 colloquy by the trial court before entering his guilty plea. After accepting appellant's plea and finding him guilty, the trial court set the matter for sentencing.

> On February 26, 2018, the day before his sentencing hearing was scheduled to occur, appellant moved to withdraw his guilty plea. The state filed a memorandum in opposition, and a hearing on appellant's motion was held on March 12, 2018. At that time, appellant's counsel argued for withdrawal of the plea by citing to relevant case law and noting that appellant wished to have his day in court. Defense counsel contended that the state would not be prejudiced if withdrawal of the plea was allowed. The trial court ultimately denied appellant's request to withdraw his plea, finding that appellant had experienced a "mere change of heart" and that withdrawal of the plea would be prejudicial to the state. The court further noted that appellant had been represented by competent and effective legal counsel, afforded a complete and extensive Crim.R. 11 plea colloquy, and understood the nature of the charges and the possible consequences of pleading guilty. Following the denial of appellant's motion to withdraw his guilty plea, the trial court sentenced appellant to a 36-month prison term.

*Harris* at ¶ 2-4.

{¶3} Appellant appealed, arguing the trial court erred when it denied his motion to withdraw his guilty plea and that he received ineffective representation by his trial counsel

- 2 -

relating to his motion to withdraw his guilty plea. *Harris* at ¶ 8 and 19. We found appellant's arguments to be without merit, noting that with respect to appellant's ineffective assistance of counsel claim, he was relying on facts and evidence that were not in the record. *Id.* at ¶ 22.

{¶4} While appellant's direct appeal in *Harris* was pending, appellant filed a motion for judicial release. This motion was denied by the trial court. On April 8, 2019, after the denial of his direct appeal, appellant filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence and a request for a hearing on his petition. Appellant claimed that his conviction should be set aside due to a violation of his Sixth Amendment right to effective assistance by counsel. Specifically, appellant contended his trial counsel provided ineffective representation relating to the plea proceedings as counsel (1) misinformed him of his eligibility for judicial release, (2) misinformed him of "erroneous evidence" the prosecution had against him; (3) withheld documents that contained "exculpatory information of ambiguity in the record and inconsistencies during plea negotiations," (4) "fail[ed] to investigate petitioners [sic] defense," and (5) misinformed him of an "erroneous maximum sentence of 11.5 years if convicted by trial." Attached to appellant's petition was his own affidavit, the affidavit of his wife, Adriana Harris, copies of text messages allegedly sent between Adriana and appellant's trial counsel, correspondence between appellant and trial counsel following appellant's sentencing, police reports from the April 30, 2017 incident, and the state's September 12, 2017 response to appellant's request for discovery.

{¶5} In her affidavit, Adriana attested that prior to appellant pleading guilty, appellant's counsel informed appellant, in Adriana's presence, that the state had a gun and a sworn witness statement as evidence against appellant, that if appellant were found guilty of all charged offenses he faced a prison sentence of 11.5 years, and that appellant would get out on judicial release 30 days after pleading guilty and being sentenced. Adriana

further claimed that after appellant pled guilty and was sentenced, appellant's trial counsel sent her a text regarding his intent to file a motion for judicial release "30 days after [appellant] was sentenced" and sent correspondence indicating counsel had found "misplaced documents" relating to appellant's case.

{¶6} In his own affidavit, appellant swore to many of the same facts that were attested to by Adriana. Appellant claimed trial counsel advised him to plead guilty as he faced an 11.5 year prison sentence if convicted of all charged offenses at trial, trial counsel had not provided him with his entire case file until after his guilty plea was entered and he was sentenced, thereby withholding evidence that would have caused him to proceed to trial rather than enter a plea, trial counsel had misinformed him about his eligibility for judicial release, and trial counsel misinformed him about the evidence the state had against him, including a firearm and a sworn witness statement. Appellant's affidavit further stated that appellant was "innocent of the charge of having weapons while under disability" and that he informed trial counsel of his innocence as well as of his "belief that [the] officer[s] fabricated th[e] charge against [him]." Appellant relied on a dispatch log detailing when Fairfield Police Officers John Cresap and Reed Collier arrived on scene to support his claim that the officers fabricated the charges brought against him. Appellant contended that because the dispatch log did not set forth an arrival time for Officer Collier, Officer Collier was never on the scene and the officers falsified their reports in order to bring false charges against him.

{¶7} The state filed a memorandum in opposition to appellant's petition for postconviction relief, arguing appellant's petition should be denied as the affidavits and documents attached to appellant's petition failed to set forth sufficient operative facts establishing that defense counsel's performance was deficient or that appellant was prejudiced by the alleged deficiencies. The state challenged the credibility of appellant's

and his wife's affidavits and noted that the dispatch log and police reports that were allegedly not turned over to appellant by counsel until after the time of appellant's plea do not support appellant's claims that the charges were fabricated or that there was exculpatory evidence indicating his innocence.  Rather, the reports contained incriminating evidence that a witness at the motel observed appellant trying to conceal a black bag containing a stolen firearm and that the firearm recovered by the police was "placed into property at the Fairfield Police Department to be sent to [the] Miami Valley Regional Crime Laboratory for DNA, Fingerprints, and Operability."

{¶8}  On June 26, 2019, the trial court denied appellant's petition for postconviction relief without holding a hearing after determining substantive grounds for relief had not been demonstrated.  Regarding appellant's claims that he had been misinformed by trial counsel of judicial release and of the potential penalty he faced if he proceeded to trial and was convicted of all offenses, the trial court found the supporting affidavits to be self-serving and not credible.  As for appellant's remaining claims, the trial court found that the record and documents attached to appellant's petition did not support appellant's claims of ineffective assistance of counsel.  In so holding, the trial court noted that the time discrepancy found in the dispatch log did not logically support appellant's rampant speculation that the charges against him were fabricated.

{¶9}  Appellant appealed, pro se, raising three assignments of error.  For ease of discussion, we will address appellant's assignments of error out of order.

{¶10}  Assignment of Error No. 2:

{¶11}  [THE] TRIAL COURT'S ANALYSIS OF APPELLANT'S PETITION [FOR POSTCONVICTION RELIEF] WAS UNREASONABLE.

{¶12}  In his second assignment of error, appellant contends the trial court erred by denying his petition for postconviction relief as he has demonstrated "the deficient

performance and the prejudice required to succeed on a claim of [i]neffective [a]ssistance" of counsel.

{¶13} A postconviction proceeding is not an appeal of a criminal conviction, but rather, is a collateral civil attack on a criminal judgment. *State v. Dillingham,* 12th Dist. Butler Nos. CA2012-02-037 and CA2012-02-042, 2012-Ohio-5841, ¶ 8; *State v. Calhoun,* 86 Ohio St.3d 279, 281 (1999). Postconviction relief petitions are governed by R.C. 2953.21, which states, in pertinent part, that

> [a]ny person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a).

{¶14} Initial petitions for postconviction relief under R.C. 2953.21 may be resolved in one of three ways. The trial court may (1) summarily dismiss the petition without holding an evidentiary hearing pursuant to R.C. 2953.21(D), (2) grant summary judgment on the petition to either party who moved for summary judgment pursuant to R.C. 2953.21(E), or (3) hold an evidentiary hearing on the issues raised by the petition pursuant to R.C. 2953.21(F). *State v. Statzer*, 12th Dist. Butler CA2017-02-022, 2018-Ohio-363, ¶ 12; *State v. McKelton*, 12th Dist. Butler No. CA2015-02-028, 2015-Ohio-4228, ¶ 9.

{¶15} "An evidentiary hearing is not automatically guaranteed each time a defendant files a petition for postconviction relief." *State v. Harding*, 12th Dist. Madison No. CA2019-05-012, 2020-Ohio-1067, ¶ 5. A trial court properly denies a postconviction relief petition without a hearing if the supporting affidavits, the documentary evidence, the files,

and the records of the case do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *State v. Blankenburg,* 12th Dist. Butler No. CA2012-04-088, 2012-Ohio-6175, ¶ 9. *See also* R.C. 2953.21(D).

{¶16} Where the basis of a petition for postconviction relief is a claim of ineffective assistance of counsel, the defendant must show that his counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions. *State v. Martin*, 12th Dist. Warren Nos. CA2003-06-065 and CA2003-06-066, 2004-Ohio-702, ¶ 12, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). "[P]rejudice will not be found unless a defendant demonstrates there is a reasonable probability that, if not for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *State v. Peters*, 12th Dist. Clermont No. CA2015-07-066, 2016-Ohio-5288, ¶ 14.

{¶17} "A trial court's decision to grant or deny a postconviction petitioner pursuant to R.C. 2953.21 is upheld absent an abuse of discretion." *State v. Watson*, 12th Dist. Butler No. CA2016-08-159, 2017-Ohio-1403, ¶ 14, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58; *Peters* at ¶ 11. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Id.*

**Withholding of Documents and Advisement of "Erroneous Evidence"**

{¶18} Appellant's claim that he is entitled to postconviction relief as he demonstrated that trial counsel withheld documents that contained "exculpatory information of ambiguity in the record" and misinformed him of "erroneous evidence" the state had against him is without merit. The documents that trial counsel allegedly withheld from appellant were a dispatch log and police reports authored by Officers Collier and Cresap. Even if we assume, arguendo, that counsel failed to provide these documents to appellant prior to his guilty plea

being entered, the documents do not provide exculpatory evidence and do not support appellant's claim that he would not have pled guilty if he had been provided with the reports.

{¶19} The dispatch log detailed when Officers Collier and Cresap were dispatched to the scene of the Fairfield motel, as well as when they cleared the scene. According to the log, Officer Cresap was dispatched at 18:48:31, arrived on scene at 18:48:32, and cleared the scene at 19:34:18. Officer Collier was not dispatched to the scene until 19:08:58 and did not clear the scene until 19:34:18. The dispatch log did not set forth an arrival time for Officer Collier. The dispatch log did provide that "40 CALIBER SW REVOLVER" was recovered at the scene.

{¶20} Officer Collier's report and Officer Cresap's reports detailed their findings upon arriving at the scene. Both officers' reports indicated they knocked on the door of motel room number 206, the room where appellant was staying, after smelling the odor of burnt marijuana. After the officers knocked on the door, they heard rustling sounds inside the room. Officer Collier walked outside and around the building to ensure that no contraband would be thrown from the motel room's window.

{¶21} Officer Cresap's report indicates that a female inside room 206 refused to open the door, stating that there was no marijuana in the room. Eventually appellant answered the door and denied having marijuana in the room. Appellant provided his name and date of birth, and Officer Cresap ran the information through dispatch. While this occurred, Officer Collier informed Officer Cresap that a gym bag with a tag containing the name "Harris" had been found on the ground outside the motel room near a silver car and the bag contained a gun and bullets. Officer Cresap detained appellant, read him his rights, and took him downstairs. Officer Cresap then went to talk to Tonya Meyers, a motel clerk. According to Officer Cresap's report, Meyers advised that as she was walking outside the motel near the silver car, she observed a black gym bag sitting on the hood of the car.

Meyers asked appellant, who was leaning out the window of his motel room, whether the bag was his, and he told her yes. Appellant asked Meyers to put the bag in his car and she refused. Appellant then stated he would pay Meyers to conceal the bag and he asked her to place the bag underneath the silver car. Meyers stated she put the bag underneath the bumper of the car and went to tell Officer Collier about the incident.

{¶22} Officer Collier's report indicates that when he went outside the motel and around the back to make sure no contraband was disposed of outside the motel room window, he encountered Meyers. Meyers advised Officer Collier of a suspicious black bag in the parking lot near a silver car parked under the room appellant was in. Officer Collier located the bag sitting underneath the car's front bumper. The officer opened the bag and found a .40 caliber revolver with .40 caliber rounds within the same enclosure – three rounds were still in the speed loader and three were loose. The bag had two nametags on it. One tag, a purple tag commonly found in air travel, had the name "Getaway Harris," an address in Hamilton, Ohio, and had a phone number listed on it. The second nametag had the name "Harris" on it with the same phone number as the other tag, as well as an email address. Officer Collier contacted Officer Cresap to see if anyone in the motel room went by the name "Harris," and upon being advised of appellant's presence, asked Officer Cresap to detain appellant. Officer Collier then ran the firearm's serial number through dispatch and was advised that it had been stolen from a vehicle in February.

{¶23} Officer Collier's report indicates he rejoined Officer Cresap and a detained Harris. At this time, Officer Collier was advised of Officer Cresap's conversation with Meyers regarding appellant asking Meyers to hide the black bag he threw out the window. Officer Collier's report indicates the black bag had not been in the parking lot when he and Officer Cresap first arrived on the scene, as they had stood in the parking lot near where the bag was later located and the bag had not been observed at that time.

{¶24} Both Officer Cresap's and Officer Collier's reports indicate that the gun that was found in the black bag was placed into evidence. Officer Collier's report indicated the "firearm was placed into property at the Fairfield Police Department to be sent to Miami Valley Regional Crime Laboratory for DNA, Fingerprints, and Operability."

{¶25} In his memorandum in support of his petition for postconviction relief, appellant noted the discrepancy in the dispatch log between Officer Cresap's dispatch time and Officer Collier's dispatch time and argued that the discrepancy "demonstrates that both Ofc. Cresap and Ofc. Coll[i]er falsified reports." Appellant contended that the two officers had fabricated the charges against him and argued that if the reports had been turned over to him by his trial counsel, he would not have entered his guilty plea.

{¶26} We agree with the trial court that there is no merit to appellant's claim. As the trial court noted, "[t]he time discrepancy found in the [dispatch log] does not logically support [appellant's] rampant speculation that the charges against him were fabricated." Regardless of the exact time Officer Collier arrived on the scene, the police reports demonstrated Officer Collier and Officer Cresap were both present on the scene on April 30, 2017 and both officers were involved in the arrest and recovery of the firearm concealed in the black bag. Additionally, as the trial court noted, the notion that appellant would have insisted on going to trial if he had been provided with the dispatch log and police reports was "highly unlikely" as the reports were of a highly incriminating nature and, by pleading guilty, appellant was able to avoid two other felony charges that carried a combined possible 4.5 year prison term. Appellant, therefore, cannot establish he was prejudiced by counsel's failure to turn over the dispatch log and police reports.

{¶27} Appellant further cannot prevail on his claim that trial counsel "misinformed" him of the evidence the state had against him. Appellant stated in his petition that he was erroneously informed by counsel that the state had a "tangible firearm" and a "sworn witness

statement" from Meyers. Appellant argued the state did not really possess such evidence. To support this argument, appellant relies on the state's September 12, 2017 discovery response, which does not mention the sworn statement or the firearm recovered by Officers Cresap and Collier.

{¶28} Although the state's discovery response did not list the firearm seized by the officers at the motel on April 30, 2017 as "tangible evidence," the state's discovery response identified the Fairfield Police Departments' reports regarding the incident and listed Meyers as a witness to be called at trial. As detailed above, the police reports describe the events that occurred on April 30, 2017 at the Fairfield motel. These reports provide that a .40 caliber revolver was recovered on scene and placed into property at the Fairfield Police Department. The reports also provide an account by Meyers of appellant's actions in attempting to conceal the black bag containing the stolen firearm. Appellant's claim that he was "misinformed" by counsel of the evidence the state had against him is disingenuous. Trial counsel correctly informed appellant of the incriminating evidence the state had against appellant. Appellant's claim that counsel was deficient is therefore not supported by the documents attached in support of his petition for postconviction relief.

### Failure to Investigate Defense of Innocence & Fabrication of Charges

{¶29} Appellant's argument that he is entitled to postconviction relief due to trial counsel's failure to investigate the defense that he was innocent and the charges against him had been fabricated is also without merit.[1] In his petition, appellant asserted that "[t]he plausible defense of contesting the ambiguity in the record pertaining to Ofc. Reed Collier's time of arrival at the scene of crime could have been raised at trial that would have proved

---

1. As we will discuss in our resolution of appellant's third assignment of error, the only defense appellant identified with any particularity was an innocence defense, wherein he alleged the charges against him were fabricated by law enforcement.

petitioner's innocence." As discussed above, the timing of Officer Collier's arrival on the scene does not logically support appellant's claims of falsification of the charges. Meyer's statement to the on-scene officers that appellant asked her to help conceal the black bag containing the firearm, as well as the fact that the firearm was recovered in a bag containing two nametags with the name "Harris" on it, contradict appellant's claim of innocence and fabrication of evidence. Counsel was not deficient for not investigating a defense that was not supported by the record. *See, e.g., State v. West*, 12th Dist. Butler No. CA2018-09-183, 2019-Ohio-4826, ¶ 23 (finding appellant's claim of ineffective assistance of counsel for counsel's alleged failure to investigate the case was without merit where the defense asserted in a postconviction petition was contradicted by the underlying record). Appellant's claim that counsel failed to investigate his defense to the charge is, therefore, without merit and cannot serve as a basis for relief from judgment.

**Misinformation Regarding Judicial Release**

{¶30} Appellant contends that trial counsel was ineffective for misinforming him of his eligibility for judicial release. Pursuant to R.C. 2929.20(C)(2), appellant could not seek judicial release until after he had served 180 days in prison. Appellant claims, however, that his trial counsel incorrectly advised him that he would be eligible to apply for judicial release 30 days after pleading guilty to having weapons under disability. In support of his claim, appellant relied on his own affidavit, the affidavit of his wife, and a text message purportedly sent by trial counsel to appellant's wife on March 15, 2018, in which the sender states, "I told you that we would file to get him out 30 days after he was sentenced. That has never changed."

{¶31} Where a petitioner attaches affidavits in support of his petition for postconviction relief, the trial court "should give due deference to [the] affidavits sworn to under oath * * * but may, in the sound exercise of discretion, judge their credibility in

determining whether to accept the affidavits as true statements of fact." *Calhoun*, 86 Ohio St.3d at 284. In determining the credibility, or lack thereof, of affidavits submitted in support of a petition for postconviction relief, a court should consider

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*Id.* at 285. "Depending on the entire record, one or more of these factors or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court." *Id.*

{¶32} In the present case, the judge who reviewed appellant's petition for postconviction relief was the same judge who has presided over the case since the time of appellant's guilty plea and subsequent sentencing. The judge was therefore familiar with the record and the efforts taken by defense counsel in his representation of appellant. The trial court judge had before it affidavits from appellant and appellant's wife – two individuals who were greatly interested in the success of appellant's petition. The two affidavits were very similar and, at times, contained identical language and assertions. Appellant's affidavit also relied on hearsay information as it referred to the March 15, 2018 text message that was allegedly sent by trial counsel to appellant's wife. As this court has previously recognized, "Ohio courts have consistently held that affidavits from interested parties such as defendants, co-defendants, and family members are self-serving and may be discounted." *State v. Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 17; *Watson*, 2017-Ohio-1403 at ¶ 36. The trial court specifically found that appellant's

assertions and those of his wife were not credible.

{¶33} The trial court also examined the text message purportedly sent by trial counsel to appellant's wife on March 15, 2018. As the court noted, this message was sent well after appellant entered his guilty plea on January 16, 2018. As the message was sent nearly two months *after* appellant had entered his guilty plea, appellant could not have relied on the text message to induce him into entering his guilty plea.

{¶34} Following our review of the record, we agree with the trial court that appellant and his wife's affidavits lacked credibility and were self-serving. These affidavits, and the text message referred to in the affidavits, do not set forth sufficient operative facts demonstrating that defense counsel's performance was deficient or that appellant was prejudiced by the alleged deficiency.

**Misinformation Regarding Maximum Sentence**

{¶35} Appellant also contends that trial counsel was ineffective for misinforming him of the maximum sentence he faced if convicted as charged with having weapons under disability, tampering with the evidence, and receiving stolen property. Appellant claims counsel incorrectly advised him that he faced an 11.5-year prison sentence.

{¶36} The only evidence offered to support appellant's assertion were appellant's and his wife's self-serving affidavits, which the trial court discounted after considering the *Calhoun* factors. As discussed above, we agree with the trial court that the affidavits lacked credibility and do not establish counsel's performance was deficient.

{¶37} Additionally, even if counsel was deficient, appellant cannot satisfy the prejudice prong of his ineffective assistance of counsel claim. Appellant cannot show that but for counsel's alleged deficient performance in misstating the potential maximum sentence, he would not have entered a guilty plea. The record reflects that appellant benefited from a favorable plea deal negotiated by trial counsel. In exchange for pleading

guilty to one felony offense, having weapons while under disability, the state agreed to dismiss two felony charges which carried a potential prison sentence of an additional 4.5 years. Rather than serving a possible 7.5-year sentence, appellant benefited from the plea agreement and was sentenced to only 36 months in prison. Appellant's claim that he would have proceeded to trial if he had been informed that he faced a 7.5-year sentence instead of an 11.5-year sentence is incredulous given the evidence collected by the state, which included a stolen firearm in a bag with appellant's name on the nametag and a witness who was asked by appellant to conceal the bag containing the firearm. Appellant's claim that trial counsel was ineffective for misinforming him of the potential prison sentence he faced is therefore without merit and cannot serve as a basis for relief from judgment.

{¶38} Accordingly, having reviewed appellant's arguments, the record, and the affidavits and documents attached to appellant's petition for postconviction relief, we find that the trial court did not abuse its discretion in denying appellant's petition for postconviction relief. Appellant failed to set forth sufficient operative facts to establish his claim of ineffective assistance of counsel. Appellant's second assignment of error is, therefore, overruled.

{¶39} Assignment of Error No. 3:

{¶40} THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO RESOLVE ALL CLAIMS IN [APPELLANT'S] R.C. 2953.21 PETITION.

{¶41} In his third assignment of error, appellant contends the trial court erred by failing to address all of the claims for relief set forth in his petition for postconviction relief. Specifically, appellant maintains that the trial court erred by failing to address his fourth claim for relief, in which he asserted that trial counsel was ineffective for "failing to investigate petitioners [sic] defense."

{¶42} R.C. 2953.21(D) explicitly provides that if a court dismisses a petition for

postconviction relief, the court "shall make and file findings of fact and conclusions of law with respect to such dismissal." *See also State v. Lester*, 41 Ohio St.2d 51, 55 (1975) (noting that where a trial court denies a petition for postconviction relief without holding a hearing, "the court is required to make and file findings of fact and conclusions of law as to the reasons for dismissal and as to the grounds for relief relied upon in the petition"). "The purpose of requiring findings of fact and conclusions of law is to apprise the petitioner of the basis for the trial court's disposition and to enable a meaningful appellate review." *State v. Ketterer*, 12th Dist. Butler CA2016-08-166, 2017-Ohio-4117, ¶ 33, citing *State v. Mapson*, 1 Ohio St.3d 217, 219 (1985).

{¶43} Contrary to appellant's assertions, the trial court did address appellant's claim that trial counsel failed to "investigate petitioners [sic] defense." The only defense identified in appellant's petition for postconviction relief was an innocence defense premised upon appellant's contention that law enforcement fabricated the charges against him. The trial court expressly considered and rejected this argument and defense in ruling on appellant's petition.

{¶44} To the extent that appellant maintains there were other defenses his trial counsel should have investigated, his petition for postconviction relief failed to set forth the other defenses with any specificity. The trial court, therefore, was not required to make any findings of fact or conclusions of law regarding these unknown and unspecified defenses. Appellant's third assignment of error is without merit and is overruled.

{¶45} Assignment of Error No. 1:

{¶46} [THE] TRIAL COURT ERRED IN DENYING APPELLANT'S R.C. 2953.21 PETITION, WITHOUT CONDUCTING AN EVIDENTIARY HEARING TO AFFORD [APPELLANT] THE OPPORTUNITY TO ESTABLISH HIS CLAIM OF INEFFECTIVE ASSISTANCE.

{¶47} In his first assignment of error, appellant contends the trial court erred by denying his petition for postconviction relief without first holding an evidentiary hearing.

{¶48} As set forth above, "[a]n evidentiary hearing is not automatically guaranteed each time a defendant files a petition for postconviction relief." *Harding*, 2020-Ohio-1067 at ¶ 5. *See also State v. Clark*, 12th Dist. Warren No. CA2008-09-113, 2009-Ohio-2101, ¶ 8, citing *Calhoun*, 86 Ohio St.3d at 282. In order to obtain such a hearing, the petitioner must show that there are substantive grounds for relief that would warrant a hearing based upon the petition. *Id.* *See also State v. Jackson*, 64 Ohio St.2d 107, 110 (1980). Substantive grounds for relief exist where there was such a denial or infringement of the petitioner's constitutional rights so as to render the judgment void or voidable. R.C. 2953.21(A); *Calhoun* at 282-283. "The burden is on the petitioner to show that the claimed errors resulted in prejudice before a hearing on a postconviction relief petition is warranted." *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 164, citing *Calhoun* at 283. "A trial court's decision to summarily deny a postconviction petition without holding an evidentiary hearing will not be reversed absent an abuse of discretion." *Harding* at ¶ 6.

{¶49} We find that the trial court did not abuse its discretion in denying appellant's petition for postconviction relief without holding an evidentiary hearing as the petition, supporting affidavits, the documentary evidence, the files, and the record did not set forth sufficient operative facts to establish substantive grounds for relief. *See Calhoun* at paragraph two of the syllabus. As discussed in our resolution of appellant's second and third assignments of error, appellant failed to set forth evidence demonstrating his claims of ineffective assistance of counsel. As appellant failed to set forth operative facts demonstrating trial counsel's performance was deficient or that any of the alleged deficiencies caused him prejudice, the trial court did not err in denying the petition for

postconviction relief without holding an evidentiary hearing. Appellant's first assignment of error is overruled.

**{¶50}** Judgment affirmed.


S. POWELL and RINGLAND, JJ., concur.