[Cite as *State v. Brown*, 2023-Ohio-258.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


STATE OF OHIO,                                  :

    Appellee,                              :               CASE NO. CA2022-02-003

    - vs -                                 :               O P I N I O N
                                               :               1/30/2023
                                               :

LARRY E. BROWN II,                             :

    Appellant.                             :


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 15CR011706


Martin P. Votel, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

Larry E. Brown II, pro se.



**S. POWELL, J.**

{¶ 1} Appellant, Larry Brown, appeals from the trial court's decision denying his third petition for postconviction relief and his motion for leave to file a motion for a new trial.

{¶ 2} In 2015, Brown was indicted for two counts of gross sexual imposition, and one count each of rape of a person less than 13 years of age, sexual battery, and

importuning. The charges stemmed from allegations made by B.H., who alleged that Brown forced her to perform various sexual acts on him when she was 11 and 12 years old. According to B.H., this sexual abuse occurred at a farm owned by a family friend when she and Brown would be there working for the farm's owner. B.H. kept a journal, where she recorded some of her thoughts about the abuse. Her mother found and read the journal. B.H. told her mother and grandmother about the sexual abuse after it occurred.

{¶ 3} The case proceeded to a bench trial and the court found Brown guilty on all counts. The court merged the rape count with the remainder of the charges and sentenced Brown to a term of ten years to life in prison. Following his convictions, Brown moved for a new trial, which the trial court denied.

{¶ 4} In his direct appeal, Brown raised two assignments of error. First, that the trial court erred in denying his motion for a new trial, and second, that Brown received ineffective assistance of counsel. This court overruled both assignments of error and affirmed. *State v. Brown*, 12th Dist. Preble No. CA2016-07-006, 2017-Ohio-4231.

{¶ 5} Brown then sought postconviction relief, which the trial court denied without an evidentiary hearing. This court affirmed that decision and the Ohio Supreme Court declined review. *State v. Brown*, 12th Dist. Preble No. CA2017-09-010, 2018-Ohio-3338, *appeal not accepted*, *State v. Brown*, 154 Ohio St.3d 1464, 2018-Ohio-5209.

{¶ 6} Brown then filed a motion for a new trial and a successive petition for postconviction relief. The trial court dismissed Brown's successive petition for postconviction relief and denied his motion for a new trial. Brown appealed to this court, raising 14 assignments of error. This court overruled all of those assignments and affirmed the trial court's decision. *State v. Brown*, 12th Dist. Preble No. CA2019-04-006, 2020-Ohio-971.

{¶ 7} The instant matter concerns Brown's motion for leave to file a motion for a

new trial, a motion for a new trial, and his third petition for postconviction relief. The trial court denied Brown's motion for leave to file a motion for a new trial and his motion for a new trial without a hearing. The trial court also denied his petition for postconviction relief.

{¶ 8} Brown now appeals the trial court's decision, raising six assignments of error. We address the first four assignments of error together.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN NOT HAVING AN EVIDENTIARY HEARING AND WROTE THE DECISION OFF OF THE STATES [sic] FALSE AND MISLEADING OPPOSITION BRIEF. INDICATED BY THE TRIAL COURT MAKING THE SAME MISSTATEMENTS OF FACTS AND LAW. THIS VIOLATED THE APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS AND WAS A DENIAL OF THE DUE PROCESS.

{¶ 11} Assignment of Error No. 2:

{¶ 12} APPELLANT WAS PREJUDICED BY THE PROSECUTION WITHHOLDING A SAMARITAN BEHAVIORAL HEALTH REPORT. THIS C.R.16(B)(4)(7), (E)(1) VIOLATION UNDER *BRADY*, PREVENTED APPELLANT FROM HAVING ALIBI WITNESSES IN HIS FAVOR. THIS WAS DENIAL OF THE DUE PROCESS, COMPULSORY PROCESS, CONFRONTATION CLAUSES, FAIR TRIAL, AND EQUAL PROTECTIONS UNDER APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.

{¶ 13} Assignment of Error No. 3:

{¶ 14} APPELLANT WAS PREJUDICED BY THE PROSECUTION WITHHOLDING THE DAYTON CHILDREN'S HOSPITAL REPORTS. THIS A [sic] C.R.16(B)(4)(5)(7), (E)(1) VIOLATION UNDER *BRADY*. THIS ERROR PROVES THE FALSENESS OF THE NOTEBOOK, SHOWING ACTUAL INNOCENCE. THIS WAS DENIAL OF THE DUE

PROCESS, COMPULSORY PROCESS, CONFRONTATION CLAUSES, FAIR TRIAL, AND EQUAL PROTECTIONS UNDER APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.

{¶ 15} Assignment of Error No. 4:

{¶ 16} APPELLANT WAS PREJUDICED BY THE PROSECUTION WITHHOLDING A PREBLE COUNTY CHILDREN'S SERVICES REPORT. THIS WAS A PRIOR STATEMENT OF [B.H.], AND THE APPELLANT. THIS A [sic] C.R.16(B)(1)(5)(7) VIOLATION UNDER BRADY. THIS WAS DENIAL OF THE DUE PROCESS, COMPULSORY PROCESS, CONFRONTATION CLAUSES, FAIR TRIAL, AND EQUAL PROTECTIONS UNDER APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.

{¶ 17} In his first four assignments of error, Brown raises a series of cumulative, repetitive, and circular claims. In essence, he argues that the state committed several *Brady* violations because it failed to produce three reports—a Samaritan Behavioral Health report, a Dayton Children's Hospital report, and a report from the Preble County Children Services Department. Brown contends that these reports are newly discovered evidence of which he was made aware through the deposition testimony of B.H. and her mother for a related civil case filed several years later.[1] Brown asserts that had he known of these reports, his defense counsel could have cross-examined B.H. so as to impeach her testimony and overturn his conviction.

{¶ 18} In denying Brown's motion for a new trial, the trial court found that the three reports were not *Brady* material and were not newly discovered information, as the

---

1. In an entry, this court granted Brown's motion to supplement the record with six depositions taken in the related civil case, *[H.] v. Vosler*, Preble Common Pleas No. 18CVO31518. This court found that the depositions were before the trial court and considered by the trial court when it denied Brown's motions for a new trial and postconviction relief.

information in the reports would have been cumulative to the evidence presented at trial. In denying Brown's successive postconviction relief petition, the trial court found that Brown was not unavoidably prevented from discovering the information in these reports. The trial court also concluded, with respect to both motions, that many of Brown's claims were barred by res judicata.

## A. STANDARD OF REVIEW

{¶ 19} "Crim.R. 33 motions for a new trial are not to be granted lightly." *State v. Thorton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 21. The decision to grant or deny a motion for a new trial pursuant to Crim.R. 33 rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Litton*, 12th Dist. Preble No. CA2016-04-005, 2016-Ohio-7913, ¶ 17. An abuse of discretion means "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. Hancock*, 108 Ohio St.3d 57, 77 (2006). In other words, it is "a view or action that no conscientious judge, acting intelligently, could honestly have taken." *Id.*

{¶ 20} The abuse of discretion standard is also applicable to a trial court's decision to grant or deny a postconviction petition. *State v. Watson*, 12th Dist. Butler No. CA 2016-08-159, 2017-Ohio-1403, ¶ 14. As stated above, it requires that we find the trial court's decision was "unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

### 1. Motion for a New Trial

{¶ 21} A motion for a new trial based on newly discovered evidence must be filed within 120 days after the rendering of a verdict or the decision of the court where a trial by jury has been waived. Crim.R. 33(B). When a defendant files his motion well outside the

120-day period, he is required to obtain leave of court to file a motion for a new trial. *Id.* Here, Brown was sentenced on June 14, 2016, and he filed his motion 1,769 days later on August 16, 2021, which is well beyond the 120-day limit. As Brown's motion was untimely, he was required to demonstrate by clear and convincing evidence that he was "unavoidably prevented" from discovering the evidence within the 120 days. *Id.* Clear and convincing evidence is evidence "which will [produce] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Widmer*, 12th Dist. Warren CA2012-02-008, 2013-Ohio-62, ¶ 168.

### 2. Postconviction Relief Petition

{¶ 22} Under R.C. 2953.21(A)(2)(a)-(b), a petition for postconviction relief must be filed no later than 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal, or, if there is no direct appeal, 365 days after the expiration of the time in which a direct appeal could have been filed.

{¶ 23} Ohio's statutory procedure allows the court to entertain an untimely postconviction petition if the petitioner shows that either (1) he was unavoidably prevented from discovery of the facts upon which he relied in his petition, or (2) the United States Supreme Court has recognized a new federal or state right that applies retroactively to persons in the petitioner's situation and the petitioner asserts a claim based on that right. If the petitioner can satisfy one of these conditions, he must also show by clear and convincing evidence that, but for the constitutional error at trial, no reasonable trier of fact would have found him guilty. R.C. 2953.23(A)(1)(a)-(b); *Watson*, 2017-Ohio-1403 at ¶ 17.

{¶ 24} As this is Brown's third postconviction relief petition, filed well beyond the 365-day timeline, Brown's request for postconviction relief rests on the claim that Brown was "unavoidably prevented" from discovering the facts contained in the three medical reports. "The 'unavoidably prevented' requirement in Crim.R. 33(B) mirrors the 'unavoidably

prevented' requirement in R.C. 2953.23(A)(1)." *State v. Barnes*, 5th Dist. Muskingum No. CT2017-0092, 2018-Ohio-1585, ¶ 28.  A party is "unavoidably prevented" from filing a motion for a new trial "if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence."  *Id.* at ¶ 26.

{¶ 25} Thus, in order for Brown to obtain relief pursuant to Crim.R. 33(B) or R.C. 2953.23, he must satisfy the threshold requirement of showing that he had no knowledge of the existence of the ground supporting the motion—namely, the information contained in the three reports—and could not have learned of this information within the time prescribed for filing.

### B. ANALYSIS

{¶ 26} With respect to Brown's first, second, and third assignments of error, Brown argues that had he had access to the medical reports, his defense counsel could have prepared a more complete defense by showing that B.H. had bipolar disorder, ADHD and several mood disorders, that B.H. was "hallucinating," that B.H. was a "pathological liar," and that B.H. had stopped taking her medications, which may have created  "a predisposition for telling lies."  Brown argues that the state was obligated to produce these three reports, and the state argues that the rule does not apply because "it did not have a duty to provide [Brown] with documents that it was not going to use and had not seen itself."

{¶ 27} Crim.R. 16(B) requires that the state turn over evidence "within the possession of, or reasonably available to the state[.]"  Crim.R. 16(B).  "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *State v. Lawson*, 12th Dist. Clermont No. CA2013-12-093,

2014-Ohio-3554, ¶ 51, quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). Evidence is "material" if there is a reasonable probability that the proceeding would have turned out differently had the evidence been disclosed. *State v. Stojetz*, 12th Dist. Madison No. CA2009-06-013, 2010-Ohio-2544, ¶ 12. This inquiry focuses not on whether the defendant would more likely than not have received a different verdict with the evidence, but "whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *State v. Dillingham*, 12th Dist. Butler Nos. CA2012-02-037 and CA2012-02-042, 2012-Ohio-5841, ¶ 13.

{¶ 28} We find that the trial court did not abuse its discretion in denying Brown's motion for a new trial and postconviction petition for several reasons. First, we agree with the trial court that there is no evidence to suggest that the state ever had any of the reports, and thus the state was not obligated to make them available to Brown. Moreover, we agree with the trial court that the information contained in these reports was cumulative of the evidence presented at trial. Under *Brady*, these reports are not "material," as there is no reasonable probability that the outcome of the proceeding would have been different had the records been made available.

{¶ 29} Second, Brown cannot satisfy the threshold requirement of unavoidable prevention in Crim.R. 33(B) and R.C. 2953.23(A)(1). Brown argues that these reports would have allowed him to present evidence to the court that B.H. was suffering from ADHD and bipolar disorder, and that his "defense would have prepared a complete defense by showing bipolar and ADHD are the two main personality disorders that contribute to the development of compulsive lying disorder."

{¶ 30} The trial transcript, however, shows that Brown and his counsel were aware of B.H.'s medical diagnoses and her "compulsive lying." In his opening statement to the court, Brown's defense counsel stated:

You will learn that the alleged victim in this case has had mental issues from the year 2009. She had been treated at Samaritan behavioral as early as 2009. * * * She has been diagnosed with ADD, attention deficit disorder; ADHD, attention deficit hyperactivity disorder; and finally, bipolar disease. The Court will see a document entitled parents' questionnaire. This is a questionnaire that emanates from the school counselor to the parent of a child that is having difficulty at school in terms of behavior. And the questionnaire, parents' questionnaire, is filled out by the child's parent. In this case the questionnaire for [B.H.] was filled out by her mother [N.B.]. Of the 48 categories on the parents' questionnaire, Mrs. [B] had check marked 38 of the 48 as being very much of a problem for [B.H.]. One of those categories, number 15 specifically, was tells lies or stories that aren't true.

{¶ 31} Further, B.H. testified that she would frequently lie to people, and her mother testified to the same. Dr. Vosler, B.H.'s physician, testified about B.H.'s counseling and therapy at trial. Vosler was asked if B.H. went to therapy and he responded, "Yes." He was then asked if the therapy took place "at Good Samaritan Behavioral" and he responded, "Possibly. I think she might have gone to Children's as well." Dr. Vosler was then asked if B.H. was "referred to Children's of Cincinnati for a psychiatric assessment," and he responded, "That's what I was thinking of, yes."

{¶ 32} Dr. Vosler also testified that he "remember[ed] looking through the [mental health] records in preparation for this case, so I remember a specific reference from the counseling concerning her diagnosis and they had placed oppositional defiant disorder on that as well." When asked what sort of referral he made for B.H., Dr. Vosler responded, "At the time we tried medication to see if it would help. It did not seem to help. And then we made referrals out to behavioral health." Notably, Brown himself testified that he "took [B.H.] to therapy myself. I drove her there at Samaritan North."

{¶ 33} Brown's defense counsel also cross-examined a forensic interviewer from Dayton Children's. Counsel's questions were related to a video interview taken at Dayton Children's after B.H. disclosed the abuse. In questioning the interviewer about that video,

Brown's counsel stated that "[B.H.] was insistent [in the video] that she not have any psychological or mental health counseling because she had a bad experience with a prior counselor" before B.H. disclosed the abuse.

{¶ 34} Brown and his counsel were aware of B.H.'s counseling and therapy at Samaritan Health and Dayton Children's at the time of trial. They were also aware that records were generated based on that counseling. Thus, Brown was not unavoidably prevented from discovering these medical reports, or the information contained therein.[2]

{¶ 35} Further, as we discussed in one of Brown's previous appeals to this court, the principles of *Brady* do not apply when testimony regarding the evidence is presented during the trial. *State v. Branham*, 12th Dist. Butler No. CA96-11-247, 1998 Ohio App. LEXIS 2358, *10 (1998) ("[T]he principles of *Brady* only apply in situations where information known to the prosecution, but unknown to the defense, is discovered after trial"); *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 40 ("Even if the evidence is disclosed during the trial, there is no *Brady* violation"). This is not a case where Brown was completely unaware of B.H.'s medical diagnoses, her prior counseling, or her behavioral issues until after the trial. All of these issues were discussed by multiple witnesses at the trial and Brown's defense counsel even referenced these issues in his opening statement to the court.

{¶ 36} Even assuming for the sake of argument that *Brady* would apply, a due process claim under *Brady* cannot be maintained in the absence of a showing of that the government's action deprived the accused of evidence that was *favorable and material.*

---

2. We note that Brown's claims regarding B.H.'s "hallucinations" were not discussed at trial. However, these hallucinations were described by B.H. in her civil deposition as "auditory hallucinations" that occurred "mostly at night." B.H. stated that she was "hearing voices" that told her to take things from her mother. B.H.'s allegations of abuse by Brown were physical in nature and occurred multiple times during the day. Thus, the argument that these nightly auditory hallucinations were material to Brown's case, or would have raised a reasonably probability that the proceeding would have turned out differently, is not persuasive.

*State v. Carr*, 12th Dist. Clermont No. CA2004-01-006, 2005-Ohio-417, ¶ 8. ("In order to establish a Brady violation, three elements must be demonstrated: first, that the prosecution failed to disclose evidence upon request; second, that the evidence was favorable to the defense; and third, that the evidence was material").

{¶ 37} After reviewing the civil depositions and the information regarding the medical records contained in those depositions, we find that the information was neither favorable nor material to Brown's defense. *See State v. Zinn*, 5th Dist. Stark No. 2007 CA 00090, 2008-Ohio-558, ¶ 40 ("[A]s there was already testimony presented at trial that the drugs did not belong to Appellant, there is no "reasonable probability" that the outcome of the trial would have been different"). Here, the trial court heard from multiple witnesses regarding B.H.'s behavior and diagnoses. There was also testimony from multiple witnesses that B.H. attended therapy at different locations, with Brown stating that he even drove B.H. to therapy himself. Thus, the information in the mental health reports provides only duplicative information that would not have changed the mind of the trier of fact.

## C. RES JUDICATA

{¶ 38} In addition to Brown's failure to demonstrate unavoidable prevention, and his failure to demonstrate a *Brady* violation, we agree with the trial court that Brown's arguments are barred by res judicata.

{¶ 39} Under the doctrine of res judicata, "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or *could have been raised* by the defendant at trial, which resulted in that judgment of conviction, or *on an appeal* from that judgment." (Emphasis sic.) *State v. Reynolds*, 79 Ohio St.3d 158, 161 (1997). However, res judicata will not bar the claim if

the petitioner presents "competent, relevant, and material evidence outside the record *that was not in existence and available to the petitioner in time to support the direct appeal.*" (Emphasis sic.)  *State v. Piescuik*, 12th Dist. Butler No. CA2013-01-011, 2013-Ohio-3879, ¶ 18.  Evidence outside the record must demonstrate that appellant could not have appealed the constitutional claim based upon information in the original record and such evidence must not have been in existence and available to the petitioner at the time of trial. *Id.*

{¶ 40} As discussed above, issues surrounding the information contained in the three medical reports could have been raised by Brown at trial.  Irrespective of those potential arguments, any issues now raised regarding the information contained in these reports is barred by res judicata, as Brown was aware at the time of trial that B.H. had undergone prior counseling, and the specific facilities of Samaritan and Dayton Children's came up more than once.  Brown could have assigned this as error in his direct appeal or his previous petitions for postconviction relief, but he did not do so, and he is barred from doing so now.

{¶ 41} Additionally, Brown previously raised an issue regarding evidence of B.H.'s hallucinations.  In a previous appeal, Brown's first assignment of error stated that "The trial court erred in not holding an evidentiary hearing after the appellant showed he was unavoidably prevented from the discovery of the fact that the alleged victim suffered from hallucinations as well as a plethora of other related mental illnesses."  *State v. Brown*, 12th Dist. Preble No. CA2019-04-006, 2020-Ohio-971, ¶ 7.  Thus, the issue of B.H.'s hallucinations, as well as her other "mental illnesses," is barred by res judicata.

{¶ 42} With respect to Brown's fourth assignment of error relating to the Preble County Children's Services report, this exact issue was raised in the seventh assignment of error in a previous appeal.  In that assignment, Brown alleged that the state "failed to

disclose a CSD (Children's Services)/Law enforcement report." *State v. Brown*, 2020-Ohio-971, ¶ 32. This court has previously held that, "[t]he doctrine of res judicata is applicable to consecutive postconviction proceedings; therefore, an issue raised in a prior proceeding is res judicata for the purpose of subsequent postconviction proceedings." *State v. Blankenship*, 12th Dist. Butler Nos. CA97-03-062 and CA97-03-063, 1997 Ohio App. LEXIS 4985, *9 (Nov. 10, 1997). As Brown has previously raised the issue of a potential *Brady* violation for this Children's Services report, Brown is barred from raising the issue again.

{¶ 43} This is Brown's fourth appearance before this court. There was nothing to prevent Brown from raising any alleged *Brady* violations pertaining to these medical reports at either the time of trial or in any one of his many appeals to this court. "Res judicata bars a petitioner from 're-packaging' evidence or issues that either *were* or *could have* been raised in trial or on direct appeal." (Emphasis added.) *State v. Casey*, 12th Dist. Clinton No. CA2017-08-013, 2018-Ohio-2084, ¶ 15. While Brown may argue that he was unable to raise these issues because he was not made aware of the medical reports until he received the depositions from the civil case, the record shows that B.H.'s counseling, as well as the records generated from that counseling, were discussed at trial. As such, Brown's first, second, third, and fourth assignments of error are overruled.

{¶ 44} Assignment of Error No. 5:

{¶ 45} THIS ERROR WILL PROVE [B.H.] PERJURED HERSELF SEVERAL TIMES ABOUT THE MATERIAL FACTS SURROUNDING THE ALLEGED CRIMES. AND THE NOTEBOOK IN THE CASE WAS FABRICATED. THIS WAS DENIAL OF THE DUE PROCESS, COMPULSORY PROCESS, CONFRONTATION CLAUSES, FAIR TRIAL, AND EQUAL PROTECTIONS UNDER APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.

{¶ 46} In his fifth assignment of error, Brown asserts that the deposition testimony in

the civil case shows that B.H. perjured herself twelve times, entitling Brown to a new trial.

{¶ 47} These alleged perjuries relate to inconsistencies between B.H.'s trial testimony and her deposition testimony regarding (1) people present on the Vosler farm when B.H. and Brown were both there, (2) the type of kissing that occurred between them, (3) the exact date and location of the rape on the Vosler property, (4) a date B.H. wrote in her notebook, (5) the date when B.H. was told about her mother's sexual abuse, (6) the reason for B.H.'s disclosure about the abuse, (7) a conversation between B.H. and Brown's mother about dropping the case, (8) a statement B.H. made about having a scholarship for college, (9) B.H.'s medical records from Dayton Children's, (10) the date when B.H. may have started smoking marijuana, (11) B.H.'s description of the cabin on the Vosler property, and (12) what B.H. wrote in her notebook.

{¶ 48} After a review of the trial testimony and the civil depositions, we agree with the trial court that the statements in the civil depositions are not material in light of the fact that B.H. was 11 years old at the time of the abuse, that the trial occurred five years later, and her civil deposition testimony was given three years after that. We agree that the statements are minor inconsistencies that are to be expected with the amount of elapsed time.

{¶ 49} Moreover, the record indicates that Brown's defense counsel cross-examined B.H. about instances where she lied, and cross-examined Dr. Vosler about B.H.'s mental health. Brown's counsel had "adequate opportunity to cross-examine [B.H.] about [her] inconsistent statements, and by doing so, his counsel properly put the issue of the credibility of [B.H.]'s testimony before the [court]." *State v. Wade*, 2nd Dist. Clark No. 06-CA-108, 2007-Ohio-6611, ¶ 16. Even with the testimony from multiple witnesses, including B.H., that she frequently lied to people, the trial court found B.H.'s testimony regarding the abuse to be credible. Thus, the argument that the introduction of these minor inconsistencies

would change the mind of the trier of fact is not well-taken.

{¶ 50} Moreover, just as with Brown's first four assignments of error, the facts surrounding these issues were either discussed at trial or could have been raised in one of his many appeals to this court. Accordingly, Brown's fifth assignment of error is overruled.

{¶ 51} Assignment of Error No. 6:

{¶ 52} APPELLANT WAS PREJUDICED BY THE CUMULATIVE EFFECTS OF ALL THE WITHHELD REPORTS AND THE PERJURY'S [sic] TOLD BY [B.H] AND [B.H.'S MOTHER] AT TRIAL. THIS WAS A DENIAL OF THE DUE PROCESS CLAUSE, COMPULSORY PROCESS CLAUSE, CONFRONTATION CLAUSE, FAIR TRIAL, AND EQUAL PROTECTIONS UNDER APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.

{¶ 53} Brown argues that the withheld reports "cumulatively deprived" him of a fair trial. Under the doctrine of cumulative error, a court "will reverse a conviction when the cumulative effect of errors deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal." *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 25.

{¶ 54} However, as relevant here, the Ohio Supreme Court has stated that "in order to consider whether 'cumulative' error is present, [the court] would first have to find that multiple errors were committed in [the] case." *State v. Madrigal*, 87 Ohio St.3d 378, 398 (2000); *State v. Kaufold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 63 ("In order for the cumulative error doctrine to apply, an appellate court must find that multiple errors, none of which individually rose to the level of prejudicial error, actually occurred in the trial court").

{¶ 55} As discussed more fully above, no such error occurred here. Therefore, because this court has found no merit to any of Brown's assignments of error discussed

above, Brown cannot demonstrate cumulative error. *State v. Hoop*, 12th Dist. Brown No. CA2011-07-015, 2012-Ohio-992, ¶ 59. Accordingly, finding the cumulative error doctrine inapplicable to the instant case, Brown's sixth assignment of error is overruled.

### D. CONCLUSION

{¶ 56} The trial court did not abuse its discretion when it denied Brown's motion for a new trial and his successive postconviction relief petition. The trial court properly found that the state did not commit a *Brady* violation regarding the three medical reports, as not only were the reports not in possession of the state, but the information contained in the reports was discussed at trial, and was not favorable or material to Brown's defense. Further, Brown had every opportunity to raise the issue of these reports at trial or in one of his previous appeals to this court, and he did not do so. In that same vein, the record shows that he was not "unavoidably prevented" from discovering the information contained in the reports. The introduction of the minor inconsistencies between B.H.'s testimony at trial and her deposition in the civil case would not change the mind of the trier of fact. Finding no error, we affirm the decision of the trial court to deny Brown's motion and petition.

{¶ 57} Judgment affirmed.

M. POWELL, P.J., and BYRNE, J., concur.